IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| Chad Schnell, David Delucia, Simona Delucia, Anthony Delucia, Christina Glavin, Jennifer Bowers, Stacy Therrien, Ricardo Meza, William Windemuth, Etabo Kipendo, Jeffrey Whichard, Karla Whichard, Brian Bollhoefer, *and* Edwin Paul<br>*Plaintiffs*<br><br>v.<br><br>United Airlines, Inc.<br>*Defendant* | Case No. 21-CV-683 (KLM)<br><br>**[ PROPOSED ] SECOND AMENDED CLASS-ACTION COMPLAINT**<br><br>*JURY DEMANDED* |

## INTRODUCTION

1) Plaintiffs were passengers on United Airlines Flight 328 ("UA328") on February 20th, 2021, operated by Defendant United Airlines, Inc. ("UNITED"), using a Boeing 777-200 with tail number N772UA, departing from Denver International Airport.

2) As a result of UNITED's failure to properly inspect and maintain its aircraft, one of two engines on this plane spectacularly failed, scattering pieces of the engine over Colorado and leaving passengers to a horrifying view of a fire on the wing, massive turbulence, and an emergency landing predicated by a well-deserved mayday call from the cockpit.

3) The 231 passengers on board UA328 were lucky to escape with their lives, as the flight managed to land with no serious physical injuries; however, it left these passengers in fear for their life for nearly 20 minutes as air traffic control and UNITED pilots hurried to make an emergency landing at the origin airport, causing foreseeable and severe emotional distress that could have been avoided had UNITED operated in accordance with federal regulations.

4) Plaintiffs therefore seek to recover for negligent infliction of emotional distress on behalf of themselves and all other passengers on board who are similarly situated.

## JURY DEMAND

5) Plaintiffs demand a trial by jury on all issues so triable.

## PARTIES

6) Plaintiff Chad Schnell is an individual residing in Indiana, which is also his domicile and state of citizenship.  Plaintiff Schnell has no residence in Illinois or Delaware.

7) Plaintiffs David & Simona Delucia, and Jeffrey & Karla Whichard, are individuals residing in Florida, which is also their domicile and state of citizenship.  These four plaintiffs have no residence in Illinois or Delaware.

8) Plaintiffs Anthony Delucia & is an individual residing in Connecticut, which is also his domicile and state of citizenship.  Plaintiff Christina Glavin are individuals is an individual residing in Massachusetts, which is also her domicile and state of citizenship.  These two plaintiffs have no residence in Illinois or Delaware.

9) Plaintiffs Jennifer Bowers & Stacy Therrien are individuals residing in Colorado, which is also their domicile and state of citizenship.  These two plaintiffs have no residence in Illinois or Delaware.

10) Plaintiff Ricardo Meza is an individual residing in Texas, which is also his domicile and state of citizenship.  Plaintiff Meza has no residence in Illinois or Delaware.

11) Plaintiff William Windemuth is an individual residing in Virginia, which is also his domicile and state of citizenship.  Plaintiff Windemuth has no residence in Illinois or Delaware.

12) Plaintiffs Brian Bollhoefer, Edwin Paul, and Etabo Kipendo are individuals residing in Iowa, which is also their domicile and state of citizenship.  These three plaintiffs have no residence in Illinois or Delaware.

13) Defendant UNITED is a corporation <u>formed in the state of Delaware and</u> headquartered in <s>Chicago, Illinois, with</s><u>Illinois, and is thus a citizen of these, and only these, states. UNITED maintains</u> offices in Denver, Colorado.

## JURISDICTION & VENUE

14) Personal jurisdiction is proper because Defendant UNITED maintains offices within the State of Colorado and the incident that gave rise to the complaint occurred within the State of Colorado.

15) Subject matter jurisdiction is proper under 28 U.S.C. § 1332(d)(2), as at least one Plaintiff and Defendant are citizens of different states and the total amount in controversy is likely to exceed $5,000,000.

16) Venue is proper because the incident that gave rise to the complaint occurred within the boundaries of this district.

## ALLEGATIONS OF FACT

17) On February 20th, 2021, Plaintiffs boarded UA328, a flight marketed and operated by UNITED between Denver, Colorado and Honolulu, Hawaii, and serviced by a Boeing 777-200 with tail number N772UA.

18) Approximately 4 minutes after takeoff, at an altitude of approximately 12,000 ft., all passengers, including Plaintiffs, could hear loud noises.

19) At that same time, all passengers, including Plaintiffs, began to feel severe turbulence: violent shaking of the aircraft.

20) Plaintiffs on the right side of the plane were able to look out of their windows and visibly see pieces of the right engine of this two-engine plane obviously missing, as well as the engine vibrating or bouncing from its normal position on the wing.

21) Shortly thereafter, a fire was visibly present within the engine.

22) Plaintiffs on the left half of the plane, in addition to those on the right side, were able to see the smoke from the fire.

23) This image was captured by a passenger on UA328, depicting the above state of affairs from the plain view of the passengers:



24) Any passengers who were not immediately able to see the engine failure shown above were promptly informed of the state of the airplane as a result of the ensuing yelling and chaos.

25) A distress call was made from the cockpit of UA328 to Air Traffic Control ("ATC"): "Mayday, mayday, United 28 -- 328 heavy, mayday, mayday, aircraft [pause] Denver Departure, United 328 heavy, mayday, aircraft just experienced engine failure, need a turn immediately."

26) The cockpit fire alarm is audible during this ATC transmission.

27) Following procedure, the pilots to the plane cut all fuel and hydraulic fluid to the affected engine.

28) However, because of what is likely (and thus upon information and belief) the result of damage to the fuel lines or valves, the fire continued in the engine.

29) ATC immediately provided UA328's pilots with a flight path to return to the airport, suggested the immediate start of descent, authorized the pilot to deviate from altitude instructions as necessary, and cleared use of any runway at Denver International Airport, in any direction, for the emergency landing.

30) ATC further coordinated emergency services to dispatch to the runways to meet UA328, with instructions to UA328 to make a full stop wherever it lands, essentially grinding this international airport to a halt.

31) Approximately 22 minutes after takeoff – and 18 minutes after passengers were aware of the danger they faced – UA328 landed.

32) For approximately 40 minutes longer, Plaintiffs were trapped on the plane while ground crews struggled to suppress the fire, placed in further fear of danger.

33) Plaintiffs, as well as, upon information and belief, most (if not all) passengers, reasonably feared for their life as a result of the shambled state of their airplane, starting at over 2 miles in altitude, and lasting approximately 18 minutes.

34) Plaintiffs, as well as, upon information and belief, most (if not all) passengers, suffered physical symptoms as a result of this intense experience, including: nausea, tachycardia, shaking, symptoms of shock, and following the flight, insomnia, nightmares, difficulty concentrating at work, and extreme fear of flying.

35) Preliminary results from an NTSB investigation into this incident indicated that it appears at least 1 engine fan blade tore off during flight due to "metal fatigue," and in the process took at least 1 more fan blade with it, causing an "uncontained engine event."

36) It is possible to inspect fan blades for metal fatigue using processes including "fluorescent penetrant inspection" and "thermal acoustic imaging," and in fact, the NTBS ordered all planes using the same engine models to do so after the incident.

37) It turns out, UNITED had good reason to perform such inspections before this incident.

38) On February 13th, 2018, another of the <u>same</u> <u>plane</u> <u>model</u>, with the <u>same</u> <u>engines</u>, with tail number N77<u>3</u>UA[1], had an uncontained engine event that was also caused by a fan blade lost due to metal fatigue.

39) Both N772UA and N773UA have been in service since 1995, upon information and belief making them and a few others owned by UNITED the oldest 777-200 airplanes in commercial service in the world.

40) UNITED's failure to ensure that what happened in 2018 did not happen again in 2021 is a stunning failure of reasonable safety practices by any standard.

## CLASS ALLEGATIONS

41) Plaintiff seeks certification of a single class: all passengers above the age of two years old on board UA328 at the time of engine failure who experienced the emotional distress typical for any human placed in fear for his or her life.

42) This class excludes all actively working for UNITED in service of UA328 at the time of the engine failure (*e.g.*, flight deck crew, cabin crew), but does not exclude "non-revenue

---

[1] Shockingly, the replacement plane that passengers on UA328 flew on the next day was none other than N773UA. Would *any* class members have consented to that if they knew?

customers" (those traveling on a free ticket) or UNITED employees who may have been on board but not in service of the flight.

43) There were 231 passengers on board, and it is expected that nearly all of them experienced the emotional distress that would be a natural human emotional response to a near-death experience[2].

44) This putative class meets the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).

45) *Numerosity* – The size of the class is expected to be over 200 persons, making it impracticable to individually name all possible plaintiffs.

46) *Commonality* – The application of Colorado negligence law to an incident that occurred on an airplane above its land will be a common question of law for all class members. Likewise, the factual basis for the negligence of UNITED will be a common question of fact for all class members.

47) *Typicality* – All passengers on board encountered the same scenario as the named plaintiff and are highly likely to have suffered emotional distress similar to the named plaintiff, as this complaint speaks of a natural human emotional response to a near-death experience[3].

48) *Adequacy* – Plaintiff has no interest separate from, or in conflict with, those of the proposed class he seeks to represent, and will fairly and zealously seek recovery for the entire class.

---

[2] It is not an element of Plaintiff's claim that the passengers were actually about to die. An uncontained engine fire is not a "safe" condition for an airplane, regardless of whether it is or is not actually likely that such a situation will result in one's fiery death, but the emotional distress here was due to what any passenger would *foreseeably and reasonably perceive* as a situation where they may lose their life. One who puts another in fear of death, causing emotional distress, is liable regardless of whether or not there was any actual risk of death.

[3] Plaintiffs do not seek damages for atypically severe and/or permanent mental health conditions, and would encourage any passengers with damages greater than the ordinary passenger to consider excluding themselves from the class.

## CLAIMS FOR RELIEF

### Count 1 – Negligent Infliction of Emotional Distress

49) UNITED has a duty, whether established by Colorado common-law or by federal statutes and regulations, to inspect and maintain its aircraft using some level of due prudence.

50) Regardless of the exact level and nature of the prudence required, aircraft engine do not disintegrate mid-air absent a complete failure to use any industry-standard or government-required procedures; breach of duty is thus demonstrated by principals *of res ipsa loqitor*, and will be further demonstrated via records obtained through discovery.

51) UNITED's breach of duty resulted in the infliction of severe emotional distress upon Plaintiff and his fellow passengers.

52) This emotional distress was entirely foreseeable and would not have occurred but for UNITED's breach of duty.

53) UNITED is therefore liable to Plaintiff and all similarly situated for the emotional distress they encountered as a result of UNITED's negligent infliction of emotional distress.

### Count 2 – Negligence *Per Se*

54) Plaintiff repeats and re-alleges the paragraphs under Count 1 as if hereby stated in full.

55) UNITED was required by federal law to properly inspect and maintain its aircraft such that it could safely operate.

56) To wit, UNITED failed to abide by 14 C.F.R. § 91.8 ("Civil aircraft airworthiness"), § 91.13 ("Careless or reckless operation"), and upon information and belief, inspection of UNITED's inspection and maintenance records will uncover numerous other failures that led to this disaster.

57) UNITED's failure to follow that law resulted in the type of harm that law sought to prevent, to wit: unsafe conditions on an airplane resulting in injury to persons or property.

58) UNITED is therefore liable to Plaintiff and all similarly situated for the emotional distress they encountered as a result of UNITED's negligence *per se*.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

i. Actual damages for garden-variety emotional distress relating to the natural human emotional response to a near-death experience, in an amount to be determined by a jury,

ii. Pre- and post-judgment interest as allowed by law,

iii. Attorney's fees for this action,

iv. Cost of the action, and

v. Any other such relief as the Court deems appropriate.

Dated: Denver, CO

~~May 11th~~ July 2nd, 2021

Respectfully submitted,

_/s/Jonathan Corbett_
Jonathan Corbett, Esq.
Attorney for Plaintiff
CA Bar #325608 (*admitted D. Colo.*)
958 N. Western Ave. #765
Hollywood, CA 90029
E-mail: jon@corbettrights.com
Phone: (310) 684-3870
FAX:   (310) 675-7080